**SLIP OP. 00-12**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| CHRYSLER CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Before: WALLACH, Judge** |
| v. | : | **Court No.: 93-10-00698** |
| | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

[ Plaintiff's Motion For Summary Judgment and Defendant's Cross-Motion For Summary Judgment denied ]

Decided: February 7, 2000

Barnes, Richardson & Colburn (Lawrence M. Friedman and Aaron M. Gothelf), for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Aimee Lee); Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, for Defendant.

## OPINION

## I

## INTRODUCTION

At issue in this case is the 1991 importation by the Chrysler Corporation (now

DaimlerChrysler Corporation, or "Chrysler") of certain "Clubcab" pickup trucks and the refusal

of the U.S. Customs Service ("Customs") to grant Chrysler a partial duty exemption on those imports pursuant to item 9802.00.80 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Although Chrysler did not initially seek such an exemption in entering the Clubcabs into the United States, Chrysler claims that its failure to do so was due to a clerical error that caused it to mistakenly believe that the trucks' engines were not of U.S. origin. Chrysler argues that, as it brought this clerical error and mistaken belief to Customs' attention in a timely manner, Customs must reliquidate its entries pursuant to 19 U.S.C. § 1520(c)(1) and grant it the partial duty exemption to which it is entitled. In relevant part, 19 U.S.C. § 1520(c)(1) provides that "the Customs Service may . . . reliquidate an entry or reconciliation to correct . . . a clerical error, mistake of fact, or other inadvertence."

Before the Court are the parties' respective motions for summary judgment. For the reasons stated below, the Court finds there to be genuine issues of material fact that preclude summary judgment for both parties.

## II
## BACKGROUND

In 1991, Chrysler imported from its subsidiary, Chrysler de Mexico, Clubcab pickup trucks containing a 5.9 liter, in-line six cylinder, turbo, diesel engine manufactured by the Cummins Engine Company ("Cummins") in the United States. Plaintiff's Statement Of Undisputed Material Facts ("Plaintiff's Statement") at ¶¶ 2-3; Defendant's Response To Plaintiff's Statement Of Undisputed Material Facts at ¶¶ 2-3. Despite the U.S. origin of these Cummins engines, Chrysler did not file a claim for partial duty exemption, pursuant to HTSUS Subheading

9802.00.80,[1] when it entered the Clubcab trucks into the United States. Defendant's Statement Of Undisputed Material Facts ("Defendant's Statement") at ¶ 4. According to Chrysler, it did not do so because its import processing system mistakenly concluded that the engines were of Mexican origin. This mistake, Chrysler asserts, was caused when Chrysler de Mexico made arrangements with Cummins' Mexican subsidiary, Cummins S.A., to purchase the same, U.S.-manufactured engines that Chrysler was purchasing directly from Cummins in the United States and shipping to Chrysler de Mexico for assembly. Plaintiff's Memorandum In Support Of Its Motion For Summary Judgment ("Plaintiff's Memorandum") at 5. Because these purchases were pursuant to a Chrysler de Mexico purchase order, Chrysler claims, its automated process for making claims under Subheading 9802.00.80 did not recognize the U.S. origin of these engines. Id.

On October 1, 1991, Donald D. Rivait, a Chrysler employee responsible for customs compliance and reporting concerning components entered under Subheading 9802.00.80, was advised that the Cummins engines at issue had actually been manufactured in the United States and might qualify for duty-free treatment. Defendant's Statement at ¶ 12. Accordingly, by letter dated October 15, 1991, Mr. Rivait informed Customs that Chrysler was seeking a duty exemption for the subject engines. Id. at ¶ 13. On November 8, 1991, Chrysler's broker, Daniel

---

[1]HTSUS Subheading 9802.00.80 allows for a partial exemption from duties on

> [a]rticles . . . assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating and painting . . . .

B. Hastings, also advised Customs that certain Clubcab trucks, including those subject to this action, had U.S. origin engines. Id. at ¶ 15.

Despite these notices, from November 15 through November 29, 1991, Customs liquidated the relevant Clubcab trucks without granting Chrysler a duty exemption for the engines. Id. at ¶ 16. Chrysler did not challenge this action by filing a protest within the ninety days allowed under 19 U.S.C. § 1514 to challenge the classification of merchandise following liquidation.[2] Id. at ¶ 17. Rather, on June 18, 1992, Chrysler filed a claim seeking the reliquidation of the subject entries pursuant to 19 U.S.C. § 1520(c)(1), which allows Customs to correct "a clerical error, mistake of fact, or other inadvertence . . . not amounting to an error in the construction of a law." Id. at ¶ 18. Customs denied this claim on September 11, 1992, id., and Chrysler filed a timely protest of this decision on December 9, 1999. Id. at ¶ 19. This protest was, in turn, denied by Customs on April 30, 1993, id., and it is the denial of this protest that Chrysler has timely challenged. This Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1581(a).

On June 11, 1999, Chrysler filed its Motion For Summary Judgment, arguing that the facts of this case establish, as a matter of law, that the actions of Chrysler and Chrysler de Mexico amount to clerical errors, mistakes of fact or other inadvertences which entitle it to a reliquidation of its Clubcab entries and a refund of duties improperly paid. On August 3, 1999, Defendant filed its Cross-Motion For Summary Judgment. For its part, Defendant argues that Chrysler's mistake constitutes an "error in the construction of a law" which cannot be remedied

---

[2] In relevant part, 19 U.S.C. § 1514(c)(3) provides that "[a] protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before . . . notice of liquidation or reliquidation . . . ."

under 19 U.S.C. § 1520(c)(1), since both Chrysler and Customs had actual knowledge of the true origin of the engines before the expiration of the protest period following the liquidation of the Clubcabs. Alternatively, Defendant argues that, even if Chrysler's mistake is not "an error in the construction of a law," it is still entitled to summary judgment because Chrysler has failed to demonstrate any mistake of fact, clerical error or inadvertence through documentary evidence.

## III

## ANALYSIS

### A

### The Standards For Summary Judgment

Under USCIT R. 56(d), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988). This may be done by producing evidence showing the lack of any genuine issue of material fact or, where the non-moving party bears the burden of proof at trial, by demonstrating that the nonmovant has failed to make a sufficient showing to establish the existence of an element essential to its case. Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

To successfully oppose a properly supported motion for summary judgment, the

nonmovant may not simply rest on its pleadings.  Rather, it must produce evidence "by affidavits or as otherwise provided in [USCIT R. 56]" which "set forth specific facts showing that there is a genuine issue for trial."  USCIT R. 56(f); see also Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987) ("[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient.").

In determining whether the parties have met their respective burdens, the Court does not "weigh the evidence and determine the truth of the matter," but simply determines "whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In so doing, the Court views all evidence in a light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Avia Group Int'l, 853 F.2d at 1560.

**B**

**Chrysler Did Not Make an "Error in the Construction of a Law."**

As noted above, Defendant argues that summary judgment is appropriate because Chrysler committed an error in the construction of a law which, based on the plain language of 19 U.S.C. § 1520(c)(1), cannot be remedied under this provision.  Because this claim, if true, would be dispositive of both parties' Motions, the Court's initial inquiry is whether the facts of this case support Defendant's argument.  See Ford Motor Co. v. United States, 157 F.3d 849, 858 (Fed. Cir. 1998) ("If an error qualifies as an 'error in the construction of a law,' that inquiry is dispositive, but if it does not so qualify, the party seeking correction must still show that its error fits within one of the three correctable categories.").

**1**

## Chrysler's Error Does Not Constitute "an Error in the Construction of a Law," as Traditionally Defined.

19 U.S.C. § 1520(c) allows for reliquidation to correct "a clerical error, mistake of fact, or other inadvertence . . . not amounting to an error in the construction of a law." Although not specifically defined by statute or regulation, the distinction between a mistake of fact and an error in the construction of a law for purposes of § 1520(c) has evolved in case law:

> [M]istakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to. Mistakes of law, on the other hand, occur where the facts are known, but their legal consequences are not known or are believed to be different than they really are.

Executone Information Systems v. United States, 96 F.3d 1383, 1386 (Fed. Cir. 1996) (quoting Hambro Automotive Corp. v. United States, 66 C.C.P.A. 113, 119, 603 F.2d 850, 855 (1979)); C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 22, 336 F. Supp. 1395, 1399 (1972), aff'd 61 C.C.P.A. 90, 499 F.2d 1277 (1974) ("A mistake of fact exists where a person understands the facts to be other than they are, whereas a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts.") (citation and internal quotations omitted). In comparison, a "clerical error" has been defined as "a mistake made by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or copying the figures or in exercising his intention," PPG Industries, Inc. v. United States, 7 CIT 118, 123 (1984), while "inadvertence" has been described as an oversight or involuntary accident, or the result of inattention or carelessness. Ford Motor Co., 157 F.3d at 860; see also id. at 857 ("[F]or an error to be correctable, it must simultaneously qualify as at least one of the three enumerated types and not qualify as an 'error in the construction of a law.'").

Here, Chrysler has alleged what amounts to a clerical error, mistake of fact or other inadvertence -- but not also an error in the construction of a law -- at the time of entry. Through its pleadings and papers, Chrysler says that its import processing system mistakenly concluded that the Cummins engines at issue were of foreign origin, and that it was because of this mistake that Chrysler did not seek a duty exemption under Subheading 9802.00.80 when it entered the trucks into the United States. Such an allegation falls squarely within the definition of a mistake of fact; Chrysler believed the facts concerning the origin of the Cummins engines to be different than they really were. Similarly, Chrysler has alleged that Chrysler de Mexico made a clerical error or other inadvertence by itself issuing a purchase order for Cummins engines, in violation of Chrysler's purchasing policy. See Plaintiff's Memorandum at 10-11 ("Chrysler de Mexico, as a contract assembler of vehicles for DaimlerChrysler, understood and was required to follow [DaimlerChrysler's] policy on purchasing U.S. origin and other non-Mexican materials. No duty devolved upon Chrysler de Mexico to exercise any original thought, discretion or judgment in carrying out the policy with respect to U.S. origin components."). In contrast, the facts of this case do not appear to constitute an error in the construction of a law, since Chrysler, as demonstrated by its maintenance of an automated information management system for making claims under HTSUS item 9802.00.08, was well aware of the legal consequences of claiming, or not claiming, the benefits bestowed by this provision at the time of entry.[3]

---

[3] That Chrysler maintained such a system at the time of entry is not in dispute. See Plaintiff's Statement at ¶ 8, Defendant's Response To Plaintiff's Statement Of Undisputed Material Facts at ¶ 8.

**2**

**Customs' Argument That a Correctable Error Can Become "an Error in
the Construction of a Law" Is Unsupported by the Language of § 1520(c)(1).**

Regardless of whether Chrysler <u>initially</u> made a correctable error, however, Defendant asserts that Chrysler's actions constitute "an error in the construction of a law" for purposes of § 1520(c)(1), since Chrysler discovered the true origin of the Cummins engines before the expiration of the protest period following liquidation.  Defendant says that "Chrysler, in possession of the necessary information before liquidation of the entries and before the protest period had even begun, plainly had the obligation to follow the procedures of section 1514 and file a protest within 90 days of liquidation."  Defendant's Reply Memorandum To Plaintiff's Response To Defendant's Cross-Motion For Summary Judgment ("Defendant's Reply") at 8.

While Defendant's position may well encourage importers, such as Chrysler, to correct factual errors at the earliest possible opportunity, it has no support in the actual language of § 1520(c)(1).  In relevant part, § 1520(c) provides as follows:

> Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct -
>
>> (1) a clerical error, mistake of fact or other inadvertence . . . not amounting to a error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction . . . .

On its face, nothing in this language or in Customs' implementing regulations[4] supports Defendant's argument that a party loses its ability to challenge an error upon the expiration of the protest period, or that a mistake of fact, clerical error or other inadvertence somehow becomes an error in the construction of a law if not challenged within ninety days of liquidation.

Section 1520(c)(1) simply provides that a mistake of fact, clerical error or inadvertence in any customs transaction (i.e., "in any entry, liquidation, or other customs transaction") may be remedied under this provision so long as the mistake is brought to Customs' attention within one year after the date of liquidation -- a requirement that appears to have been satisfied in this case. Here, Chrysler allegedly made a mistake of fact in its initial entries of the Clubcabs (as well as a clerical error or other inadvertence in issuing two purchase orders), and it timely sought to correct these mistakes through invocation of § 1520(c)(1) within one year of liquidation. Thus, under the plain language of the statute, it appears that no other action was required of Chrysler to obtain the benefits of § 1520(c)(1), assuming that the alleged mistakes are otherwise adverse to Chrysler and manifest from the record or established by documentary evidence.

---

[4] 19 C.F.R. § 173.4(b), which essentially does no more than paraphrase 19 U.S.C. § 1520(c)(1), provides for the correction of a clerical error, mistake of fact, or other inadvertence, so long as the error "(1) Does not amount to an error in the construction of a law; (2) Is adverse to the importer; and (3) Is manifest from the record or established by documentary evidence."

Defendant has submitted no evidence that its position concerning what constitutes "an error in the construction of a law" is anything more than an argument advanced for the purposes of this litigation. As such, the Court need not consider whether Customs' interpretation of § 1520(c)(1) enjoys deference under the standards set out in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Bowen v. Georgetown Univ. Hospital, 488 U.S. 204, 212 (1988) ("We have never applied the principle [of deference] . . . to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice.'").

Had Congress intended to impose the restriction on § 1520(c)(1) that Defendant claims exists, it could have included language to this effect in the statute. That Congress failed to evidence such an intention in either the statute or the legislative history,[5] however, indicates no such restriction exists. See Ishida v. United States, 59 F.3d 1224, 1231 (Fed. Cir. 1995) (noting that, had Congress intended to limit the coverage of the Civil Liberties Act of 1988 in the manner asserted by the government, Congress could have expressed its intent in the statutory language). This is especially true since, in the absence of any such explicit limitation, the plain language of § 1520(c)(1) appears to cover all mistakes of fact, regardless of when they are discovered. See Timex V.I., Inc. v. United States, 157 F.3d 879, 882 (Fed. Cir. 1998) ("To ascertain whether Congress had an intention on the precise question at issue, we employ the traditional tools of statutory construction. The first and foremost tool to be used is the statute's text, giving it its plain meaning.") (internal quotes and citation omitted).

**3**

**Neither NEC Nor Universal Cooperatives Show That
Chrysler Committed "an Error in the Construction of a Law."**

Notwithstanding this lack of textual support, Defendant argues, inter alia, that this Court should be guided by the case of NEC Electronics v. United States, 13 CIT 214, 709 F. Supp. 1171 (1989). In NEC, this Court upheld Customs' dismissal of a § 1520(c)(1) claim after finding that the importer's representative had actual knowledge of the nature of the goods at issue, as well as the existence of its desired tariff classification, prior to the expiration of the liquidation/protest period. According to Defendant, the undisputed facts of this case show that Chrysler and its broker were similarly "certain of the nature of the merchandise and the resulting classification

---

[5] Defendant has not pointed out any legislative history that supports its interpretation.

before . . . the expiration of the protest period," and that "nothing prevented Chrysler from protesting the liquidation" when Customs did not give it a duty exemption. Defendant's Memorandum[6] at 12-13. Thus, Defendant argues, since Chrysler could have initially protested the liquidations under 19 U.S.C. § 1514, this Court should follow NEC and find that Chrysler now "possesses no remedy under 19 U.S.C. § 1520(c)." Id. at 13.

At first sight, NEC supports Defendant's position. In a footnote, NEC makes clear that, even though the importer may have been unaware of certain factual attributes concerning its merchandise at importation, the fact that both the importer and Customs possessed the proper factual information "many months before liquidation" and "thus had ample time to properly contest the classification" prevented the importer from invoking § 1520(c)(1). NEC, 13 CIT at 218 n.4, 709 F. Supp. at 1174 n.4. Thus, without further inquiry, if NEC was binding authority it would appear to require dismissal of Chrysler's claims.

After NEC, however, the Court of Appeals For The Federal Circuit ("CAFC") considered a similar fact pattern in Executone Information Systems v. United States, 96 F.3d 1383 (1996). In Executone, an importer learned of its alleged mistakes of fact before the end of the initial protest period, and thus could have made timely challenges under 19 U.S.C. § 1514 within ninety days of liquidation.[7] Despite this fact, the CAFC rejected the government's assertion that the

---

[6] Memorandum In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Defendant's Cross-Motion For Summary Judgment ("Defendant's Memorandum").

[7] Executone, an importer of telephone handsets, failed to submit the necessary documentation to submit its claim for duty-free treatment. Executone, 96 F.3d at 1384. Soon after entry, therefore, and before liquidation, Customs notified Executone that the necessary documents were missing. Id. Despite notice, Executone did not submit the necessary documents or make a formal § 1514 protest in the ninety days following liquidation. Id. Rather, approximately six months after the entries were liquidated, Executone filed the proper forms with

plaintiff was actually challenging the classification of merchandise, ruling instead that the plaintiff had properly alleged a correctable "mistake of fact" under § 1520(c)(1).

Most importantly for present purposes, in reaching this decision the CAFC did not address the issue of <u>when</u> the importer became aware of its alleged error. Rather, the CAFC simply inquired whether the plaintiff had alleged that a "mistake of fact" had ever occurred and, finding that Executone had alleged such an error at the time of importation, concluded that the facts of this case did not present an error in the construction of a law. <u>See</u> <u>Executone</u>, 96 F.3d at 1386 ("Here . . . Executone has alleged a mistake of fact: namely, Executone believed, <u>at the time of importation</u>, that valid Form A's had been filed when, in fact, they had not.") (emphasis added); <u>see also</u> <u>id.</u> at 1388 ("Here, based on the facts as alleged, the classification of Executone's merchandise . . . was clearly the result of a mistake of fact variety-- Executone thought Form A's had been filed when, in fact, the forms had not been. This is precisely the type of error which is properly correctable through the application of 19 U.S.C. § 1520(c)(1).").

In light of this holding, as well as the above statutory analysis, it appears to this Court unwise to rely upon the analysis set forth in <u>NEC</u>. Although, in <u>Executone</u>, the CAFC did not explicitly discuss the issue of timing, its silence on the issue -- in the face of an importer's clearly established knowledge of its factual mistake prior to liquidation -- demonstrates that such knowledge does not render an error an "error in the construction of a law" for purposes of § 1520(c)(1). Rather, the CAFC's opinion indicates that, at least in a case like the one at bar, the time at which an importer becomes aware of its error is of no significance to the question of whether the alleged mistake constitutes an error in the construction of a law. Thus, to the extent

---

Customs and sought a reliquidation of its entries pursuant to § 1520(c)(1). <u>Id.</u>

that NEC states otherwise, the Court recognizes a conflict between this case and Executone and

declines to follow this aspect of NEC.


Defendant also argues that Customs' decision to liquidate the merchandise as entered

"may be likened to a decisional mistake of the type described in Universal Cooperatives, Inc. v.

United States, 13 CIT 516, 715 F. Supp. 1113 (1989)]" since Chrysler, by way of letters from

Donald D. Rivait and Daniel B. Hastings, made Customs aware prior to liquidation that the

engines might qualify for a duty exemption.  Defendant's Memorandum at 15.  According to

Defendant, although "Customs may have been mistaken as to the correct state of the facts," all

relevant positions as to the facts were known by Customs prior to liquidation; thus creating an

error in the construction of a law which cannot be challenged under § 1520(c)(1).  Id.


In Universal Cooperatives, Customs, after conducting a laboratory analysis on an

importer's entries of polypropylene baler twine, determined that the twine had actually been

produced from polypropylene strips wider than what the importer had claimed; a state of facts

which changed the classification of the merchandise.  13 CIT at 517, 715 F. Supp. at 1114.  The

importer did not timely seek to challenge this classification within ninety days of liquidation, but,

five months after liquidation, sought to have the duties reliquidated under § 1520(c)(1) on the

grounds that Customs' determination was a correctable mistake of fact.  Id.  Customs denied this

request, and the importer sought review before this Court.  Id.


In upholding Customs' decision, Universal Cooperatives distinguished between a

"decisional mistake," in which a party makes the wrong choice between two known, alternative

sets of facts, and an "ignorant mistake," in which a party is unaware of the existence of the

correct, alternative set of facts.  Id. at 518, 715 F. Supp. at 1114.  Only ignorant mistakes, the

Court held, are remediable under § 1520(c)(1), while decisional mistakes need to be challenged

under § 1514 within ninety days of liquidation.  Id.  Applying this distinction to the facts before

it, the Court stated:

> If there was a mistake here, it was surely of the decisional type.  The government knew
> that plaintiff was seeking to enter the merchandise in a manner which required that the
> strips be wider than an inch.  Nevertheless, the government, relying on a laboratory
> testing of a sample, rightly or wrongly, made a decision that the strips were less than one
> inch wide.  This created a situation for which the conventional protest method of 19
> U.S.C. § 1514 was manifestly designed, i.e., an importer with a fully informed position
> regarding its merchandise, confronting an informed, but adverse decision by the
> government.  One of them may have been mistaken as to the correct state of the facts, but
> it was not from total ignorance of a possible alternative state of facts. . . .  Here . . .all
> relevant positions as to the facts were known prior to the original liquidation and it would
> have been no hardship, and certainly no impossibility, for plaintiff to have made a timely
> protest against that liquidation.  If the government was mistaken as to the facts as a result
> of having chosen incorrectly from a number of known alternatives, then the condition
> precedent for contesting that decision in court was the making of a timely protest under
> Section 514, thus allowing the question to be considered administratively in the most
> orderly and efficient way.

Id., 715 F. Supp. at 1114-15.

        Contrary to Defendant's assertion, the facts of this case do not present a similar decisional

mistake by Customs.  In Universal Cooperatives, neither Customs nor the importer was ever

faced with an ignorant mistake where they were simply unaware of the existence of a correct,

alternative set of facts.  Rather, from the start, both parties were fully informed of both the

potential alternative classifications and the respective facts supporting these alternatives --

circumstances which the CAFC has described as presenting a "typical challenge to a Customs

classification" where "the only proper course of action would have been to file a timely protest

under section 1514." Executone, 96 F.3d at 1388.[8]   In contrast, here both Chrysler and Customs

appear to have been faced with an ignorant mistake at the time of importation, since neither party

was aware of the fact that the Cummins engines were actually manufactured in the United States.

That, of course, is precisely the type of "mistake" that this Court recognized as remediable under

§ 1520(c)(1) in Universal Cooperatives."[9]

---

[8] In Executone, the CAFC stated that such a "typical challenge" exists "where Customs evaluated the merchandise and, based on its construction of the tariff schedule, determined into which of two categories the merchandise must be placed . . . .  In such a case, there is no dispute that the only proper course of action would have been to file a timely protest under section 1514."  96 F.3d at 1388.  In contrast, in Executone the CAFC observed that the facts before it presented a typical mistake of fact, since, inter. alia, "Customs has never disputed that Executone's merchandise would properly qualify for duty-free treatment . . . had Form A's been properly submitted."  Id.

This distinction between a "decisional mistake" (i.e., a "typical challenge") and an "ignorant mistake," of course, is a reflection of the fact that although "Congress clearly envisioned a liberal mechanism for the correction of inadvertences under section 1520(c)(1)," ITT Corp. v. United States, 24 F.3d 1384, 1389-90 (Fed. Cir. 1994), § 1520(c)(1) is nevertheless a narrow exception to the rule that a Customs classification decision is final unless a protest is filed within ninety days following liquidation.  See infra, Section III.B.4 (discussing how it is not "absurd" or "illogical" that Congress created an exception to the finality requirements of 19 U.S.C. § 1514 for a limited range of errors).

[9] Defendant further suggests that any "ignorant mistake" that occurred at entry became a "decisional mistake" once Chrysler had informed Customs, through the letters from Donald D. Rivait and Daniel B. Hastings, that the Clubcabs may be eligible for a duty exemption.  This suggestion is akin to Defendant's argument that an initial mistake of fact may be transformed into an error in the construction of a law.  As discussed above, such a position runs contrary to both the plain language of § 1520(c)(1) and the CAFC's decision in Executone, and the Court rejects it as such.

Indeed, even if an "ignorant mistake" could become a "decisional mistake," the undisputed facts of this case show that Customs was not in possession of all the relevant factual information upon which it could have made an informed classification decision.  While it is true that Chrysler personnel had informed Customs prior to liquidation that the Cummins engines were actually of U.S. origin, there is no dispute that Chrysler failed to submit adequate proof of this fact prior to liquidation.  As Defendant itself notes, "both letters advising Customs of 9802 eligibility were vague, unspecific and failed to provide adequate proof that the engines were in fact U.S. manufactured goods."  Defendant's Reply at 10.  Accordingly, and in contrast to

**4**

**That § 1520(c)(1) Gives Importers the Ability to Correct Mistakes of Fact for up
To One Year after Liquidation Is Not an "Absurd and Illogical Result."**

Finally, Defendant argues that

> [i]f we accept Chrysler's interpretation that only the isolated slice of time at time
> of entry can be considered for a mistake of fact claim, every importer would
> always have [19 U.S.C. § 1520(c)], unbridled, at its disposal effectively creating a
> period of 1 year from liquidation in order [sic] contest liquidation. This
> interpretation leads to the absurd and illogical result of rendering section 1514 and
> the protest procedure useless in all instances, where mistakes of fact are alleged.
> Plainly, [19 U.S.C. § 1520(c)] is not meant to nullify the effect of section 1514
> and Chrysler's contentions must be rejected.

Defendant's Reply at 4.

Through § 1520(c)(1), Congress has given Customs the ability to correct factual mistakes
even after the legality of all other orders would have become final and conclusive under 19
U.S.C. § 1514, "notwithstanding a valid protest was not filed." In so doing, "Congress clearly
envisioned a liberal mechanism for the correction of inadvertences," Aviall of Texas, Inc. v.
United States, 70 F.3d 1248, 1250 (Fed. Cir. 1995), since "[t]he Government has no interest in
retaining duties which were improperly collected as a result of clerical error, mistake of fact or
inadvertence," C.J. Tower, 68 Cust. Ct. at 21, 336 F. Supp. at 1399 (quoting Hearings on H.R.

---

Universal Cooperatives, in this case Customs was not supplied with the complete factual
information that would have allowed it to have made a wrong choice between two known,
alternative sets of facts (i.e., a decisional mistake). See Taban Co. v. United States, 960 F. Supp.
326, 334 (CIT 1997) ("While . . . it is well-established that a determination by the Customs
Service that merchandise is covered by a certain provision of the TSUS is a conclusion of law,
Customs must make its classification determinations based on accurate and complete
information.") (internal quotes and citation omitted).

5505 before the Senate Committee on Finance, 82nd Cong., 2d Sess., 30 (1952)) (emphasis added).  See also ITT Corp., 24 F.3d at 1389 (similarly noting that "Congress clearly envisioned a liberal mechanism for the correction of the specific inadvertences set forth in § 1520(c)(1)," and citing various pieces of legislative history which "emphasize[ ] the remedial purpose of the statute").  Stated another way, even though § 1520(c)(1) is a "narrow exception" to the rule that a Customs classification decision is final unless a protest is filed within ninety days following liquidation, Degussa Canada Ltd. v. United States, 87 F.3d 1301, 1302 (Fed. Cir. 1996), it is an exception that has broad application when applicable.

In light of this remedial purpose, the fact that § 1520(c)(1) allows importers up to one year following liquidation to correct a demonstrated mistake of fact, clerical error or other inadvertence – even when the error is discovered prior to liquidation -- is not an "absurd and illogical result."  While a prudent importer would presumably want to correct its inadvertence at the earliest possible opportunity, there is no requirement in § 1520(c)(1) that an importer must do so.  Cf. ITT Corp., 24 F.3d at 1388 (noting that, while a prudent importer would submit the necessary information to allow a prompt and favorable § 1520(c)(1) decision by Customs, "neither statute nor case law precludes court-ordered reliquidation under § 1520(c)(1) after a trial de novo").  To find otherwise would, in essence, read an arbitrary cut-off date into the language of § 1520(c)(1) and obligate this Court to answer such questions as (1) when did the importer become aware of its alleged mistake of fact;[10] (2) when was the importer able to substantiate its

_____

[10] Chrysler correctly and persuasively observes that, "[u]nder the Government's approach any subsequent attempt by an importer to establish the correct facts and that a mistake of fact had occurred would negate the original mistake of fact and preclude relief.  This is true because almost any attempt to explain the mistake will require finding someone in the company who knew the true facts at or before the time of entry."  Plaintiff's Memorandum In Reply To Defendant's Response To Plaintiff's Motion For Summary Judgment And Response To Defendant's Cross-Motion For Summary Judgment ("Plaintiff's Reply") at 20.

alleged error; and (3) could the importer have made a timely, meaningful protest within ninety days of liquidation.[11]  That, it appears to the Court, is contrary to both the letter and spirit of § 1520(c)(1).

In short, Defendant has not shown that Chrysler made an "error in the construction of a law" that would preclude it from relief under 19 U.S.C. § 1520(c)(1).  Rather, Chrysler has alleged that it failed to seek a duty exemption at entry because, due to a clerical error, it was unaware of true origin of the Cummins engines.  These are precisely the types of errors that are correctable through 19 U.S.C. § 1520(c)(1).  Accordingly, it is to the question of whether Chrysler has sufficiently gone beyond making mere allegations, and adequately supported its claims through record or other documentary evidence, that the Court now turns.

**C**

**Genuine Issues of Material Fact Remain as to Whether Chrysler
de Mexico Committed a "Clerical Error" or "Other Inadvertence."**

The first correctable error alleged by Chrysler is that its subsidiary, Chrysler de Mexico, committed a clerical error or other inadvertence by not following Chrysler's purchasing policy and itself issuing a purchase order for Cummins engines.  See Plaintiff's Memorandum at 10-11.  As noted previously, a "clerical error" has been defined as "a mistake made by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or copying the figures or in exercising his intention."  PPG Industries, 7 CIT at 123.  Consistent with this definition, the CAFC has made clear that in order to demonstrate a "clerical error," a plaintiff must show that

---

[11] Such inquires, however, may be appropriate in determining whether an importer has actually demonstrated an "other inadvertence."  See infra, note 17.

the party having committed the alleged error "was 'one upon whom no duty devolved to exercise original thought or judgment'" Ford Motor Co., 157 F.3d at 860 (quoting Yamada v. United States, 26 C.C.P.A. 89, 94 (1938)). In so doing, the plaintiff must prove that the party in error was given "complete, binding, non-discretionary instructions." Id. at 861. Once a plaintiff has made such a showing, Customs may nevertheless "show that the error is not correctable by showing that a noncorrectable error of those who did have discretion in the matter contributed to the mistake." Id. at 860.

Chrysler has failed to show that it is entitled to summary judgment. Although Plaintiff alleges that Chrysler de Mexico violated DaimlerChrysler's purchasing policy by acquiring U.S.-produced Cummins engines with its own purchase order, the only relevant evidence it has submitted is the deposition testimony of Gordon Heidacker, a former senior buyer of engines and accessory drives at Chrysler, that purchase orders were issued for the Cummins engines by both Chrysler U.S. and Chrysler de Mexico. See Plaintiff's Memorandum at 10 (citing Heidacker Dep. at 38). Chrysler has provided no evidence to support its claims that the "procedure for all non-Mexican origin components was that such components be purchased by [DaimlerChrysler] and resold to Chrysler de Mexico," and that "[n]o duty devolved upon Chrysler de Mexico to exercise any original thought, discretion or judgment in carrying out the policy with respect to U.S. origin components." Id. at 10-11. Since Chrysler bears the burden of demonstrating these elements in order to show that Chrysler de Mexico committed a correctable clerical error, Ford Motor Co., 157 F.3d at 860-61, its failure to identify any evidence on these counts precludes summary judgment in its favor.

Similarly, Chrysler has not brought forth any evidence that Chrysler de Mexico's actions

constitute an "inadvertence." As noted previously, "inadvertence" has been described as an oversight or involuntary accident, or the result of inattention or carelessness. Id. at 860. Chrysler has introduced no evidence that Chrysler de Mexico's issuance of purchase orders was the result of an oversight, accident or carelessness, as opposed to a willing and informed choice. See id. at 860-61 (finding that where the party in error "garbled his instructions and therefore consistently-- not carelessly-- did not carry them out," the error may qualify as a "clerical error" but not as an "inadvertence"). In fact, Plaintiff's own evidence seems to raise a question as to whether Chrysler de Mexico purchased the Cummins engines itself in order to receive a commercial advantage; a situation which casts doubt on any claim that its actions were involuntary or a mistake. See Deposition of Gordon Heidacker at 16-17 ("Q. In other words, Chrysler de Mexico would not take direction from Cummins U.S. or did not want to take direction? A. They were seeking an advantage I think currency-wise.").

Despite this failure by Chrysler, however, the Government has not demonstrated that it is entitled on these claims to judgment as a matter of law. In its Cross-Motion For Summary Judgment, Defendant mostly ignores Chrysler's claim concerning clerical error or inadvertence and, consequently, does not adequately discuss Chrysler's failure to produce evidence of its purchasing policy or Chrysler de Mexico's subordinate (i.e., non-discretionary, clerical) status as a sufficient basis upon which the Government is entitled to summary judgment. Defendant chose to concentrate on evidence relating to Chrysler's "mistake of fact" claim, and, to the degree that it has challenged Chrysler's "clerical error" and "other inadvertence" claims, it has only done so by observing that "[d]espite having ample time opportunity to do so, . . . Chrysler has never produced any purchase orders issued by Chrysler de Mexico to Cummins S.A., nor any other documents evidencing the alleged transaction between Chrysler de Mexico and Cummins, S.A.

which would substantiate the alleged error." Defendant's Memorandum at 17.[12] Upon close

review, however, this argument does not hold true, since the Heidacker deposition clearly shows

that two purchase orders were issued for the Cummins engines.[13]


In short, both the Government and Chrysler have failed to demonstrate that they are

entitled to summary judgment on this point.


**D**


**Genuine Issues of Material Fact Remain as to
Whether Chrysler Made a "Mistake of Fact."**


Chrysler's second claim is that it made a correctable "mistake of fact" when it mistakenly

believed the engines in the Clubcab trucks it was importing to be of Mexican origin. Plaintiff's

Memorandum at 11-12. For Customs to reliquidate an entry to correct such a mistake,

§ 1520(c)(1) and 19 C.F.R. § 173.4(3) require a party to either (1) show that the alleged error is

---

[12] As discussed below, in Defendant's Supplemental Memorandum addressing the proof that Chrysler must show to demonstrate that it committed a mistake of fact, the Government notes that "Chrysler did not provide any documentary evidence to substantiate its purchasing policy." Defendant's Supplemental Memorandum at 6. This is the first time that the Government addresses this lack of evidence, as neither its Memorandum In Support Of Its Motion For Summary Judgment nor its reply memorandum specifically note this shortcoming as a grounds for summary judgment concerning Chrysler's clerical error or other inadvertence claim. As such, the Court does not consider Defendant to have made a proper motion for summary judgment on this issue.

[13] See Heidacker Deposition at 38, lines 20-23 ("Q. Are you saying that two purchase orders were issued, one by Chrysler U.S. for this engine and another purchase order by Chrysler de Mexico to Cummins SA? A. Yes, and I can tell you why."). While the Heidacker deposition may not be as persuasive evidence as an actual purchase order, this deposition most certainly constitutes at least some evidence to support Chrysler's claim that Chrysler de Mexico issued a purchase order to Cummins S.A.

manifest from the record, or (2) establish the alleged error by documentary evidence. On this point, both parties claim that they are entitled to summary judgment.

To decide these respective motions, it is first necessary to determine what evidence Chrysler must produce to establish its alleged mistake of fact "by documentary evidence,"[14] and what evidence (if any) Defendant may introduce to refute this showing. On these points, which will be discussed in turn below, the parties differ. Chrysler argues that, in order to establish a "mistake of fact," a party need not demonstrate the underlying cause of its mistake, but must only show that it did not know the facts as they truly were at the time of entry. Plaintiff's Supplemental Brief at 2. Chrysler also argues that any negligence by an importer in making an initial factual determination would not preclude its determination from being a "mistake of fact" under 19 U.S.C. § 1520(c)(1), and notes in support that in several cases from this Court "the initial negligence [by importers] did not preclude the errors from being mistakes of fact for purposes of 19 U.S.C. § 1520(c)(1)." Id. at 4-6.

Defendant takes the opposite positions. According to Defendant, in order to prove that it committed a correctable "mistake of fact," an importer must go beyond showing that it was mistaken concerning the correct state of fact, and must establish the underlying cause or reason for its mistake. Here, the Government asserts that Chrysler has not brought forth any evidence that it can meet this burden, since Chrysler has "not provide[d] any documentary evidence to substantiate its purchasing policy, nor has it produced copies of the purchase orders allegedly

---

[14] In this case, Chrysler's alleged mistake of fact is not manifest from the record (i.e., "apparent . . . from a facial examination of the entry and the entry papers alone," ITT Corp., 24 F.3d at 1387), and Chrysler does not appear to claim otherwise. Thus, the Court need only inquire whether Chrysler has established its claimed mistake of fact through documentary evidence.

issued by Chrysler de Mexico to Cummins S.A."  Defendant's Supplemental Memorandum at 6.

Rather, it argues that "[a]n examination of Chrysler's mistake in initially determining the country

of origin of the engines indicates that negligence exists," and that such negligence, which was the

cause of Chrysler's "mistake," precludes a finding that a "mistake of fact" exists for purposes of

§ 1520(c)(1).  Id. at 7.  Moreover, the Government adds that Chrysler was also negligent in

failing to act after it discovered its mistake, since it could have submitted the required

documentation during the protest period following liquidation (but did not).  Id. at 4.

**1**

**Although Chrysler Need Not Produce Evidence of the Underlying Cause or Reason
For its Mistake of Fact in Order to Establish its Error by Documentary Evidence,
There Is a Genuine Issue of Material Fact as to Whether Chrysler Knew
the True Origin of the Cummins Engines at the Time of Entry.**

The first issue the Court needs to address is the nature of the evidence that Chrysler must

produce to demonstrate its alleged error.  As noted previously, a "mistake of fact" for purposes of

§ 1520(c)(1) has repeatedly been defined as occurring when "(1) the facts exist, but are unknown,

or (2) the facts do not exist as they are believed to."  Executone, 96 F.3d at 1386 (quoting

Hambro, 66 C.C.P.A. at 119, 603 F.2d at 855).  On its face, this definition does not require a

plaintiff to demonstrate evidence of the underlying cause or reason for its mistake of fact, and

case law does not appear to support of such a requirement.  Specifically, a review of several cases

interpreting § 1520(c)(1) shows that, although the underlying cause of a "mistake of fact" may

have been known and recognized, see, e.g. Aviall of Texas, Inc. v. United States, 18 CIT 727,

734, 861 F. Supp. 100, 107 (1994), aff'd 70 F.3d 1248 (Fed. Cir. 1995) (finding that "the

admissions of Aviall's broker disclose that the failure to file a new yearly blanket certification

was due to the fact that the broker 'forgot' to renew the blanket certification"), in no case has it

been held that an importer needed to demonstrate the underlying cause of the factual

misunderstanding.  Rather, courts have required a plaintiff to demonstrate, from the entry

documents or other evidence, only two points in order to substantiate its "mistake of fact":  (a)

the correct state of facts; and (b) that either the importer or Customs had a mistaken belief as to

the correct state of facts.

For example, in United States v. C.J. Tower & Sons of Buffalo, Inc., 61 C.C.P.A. 90, 499

F.2d 1277 (1974), the Court of Customs and Patent Appeals ("CCPA"), in reviewing whether an

importer had provided sufficient proof of its alleged mistake of fact, noted that the importer's

statement of material facts included the following two facts to which the Government had

admitted:

> 15.  The merchandise covered by the protest herein consists of materials certified
> to the Commissioner of Customs by the authorized procuring agencies to be
> emergency war material purchased abroad.

> 17.  At no time prior to sixty days after liquidation of the merchandise covered by
> the protest herein did the District Director of Customs at Buffalo, New York know
> the fact set out in number 15 above, nor did plaintiff.

C.J. Tower, 61 C.C.P.A. at 96, 499 F.2d at 1282.  Based on these two admitted facts, the CCPA

held simply that "we are unable to see anything that needs to be proved to justify the summary

judgment granted to [the importer]," and did not further require the importer to provide proof of

the underlying cause of its mistake.  Id. at 97, 499 F.2d at 1282.  Similar recognition of the proof

necessary to show a "mistake of fact" is illustrated in a number of other cases.  See, e.g., C.J.

Tower, 68 Cust. Ct. at 22, 336 F. Supp. at 1399 ("In the statement of material facts, the parties

concede that both the district director and the importer were unaware of the facts justifying duty-

free entry until after the liquidations became final.  Such lack of knowledge, both in kind and

degree, is such as to clearly come within the statutory language, 'mistake of fact, or other inadvertence.'"); PPG Industries, Inc. v. United States, 4 CIT 143, 148 (1982) (finding that plaintiff had failed to produce evidence as to "the true experimental character and intended use of the subject merchandise."); Concrete Pumps, Ltd. v. United States, 10 CIT 505, 509, 643 F. Supp. 623, 625 (1986) (granting the government's motion to dismiss where "the protests filed by plaintiff and the allegations in its complaint are void of any reference to a mistake in the nature of the goods."); Degussa, 87 F.3d at 1304 (upholding dismissal where "there was no factual misapprehension about the nature of the imported merchandise. The only misapprehension was about the proper classification . . . .").

In light of this and other authority, the Court holds that Chrysler may establish its "mistake of fact" by showing (a) that the Cummins engines at issue are actually of U.S. origin; and (b) that it was mistaken as to the origin of the Cummins engines when it entered the Clubcab trucks into the United States. Although Defendant argues that Chrysler has not met its evidentiary burden, since it has neither provided any documentary evidence to substantiate its alleged purchasing policy nor produced copies of the purchase orders allegedly issued by Chrysler de Mexico to Cummins S.A, such evidence goes to the underlying cause of Chrysler's mistake of fact -- an issue which Chrysler need not show. Accordingly, the Court need not consider the alleged lack of such evidence in deciding whether Chrysler has demonstrated a "mistake of fact."[15]

---

[15] Even if the Court were to consider such evidence, the Heidacker deposition, discussed above, would preclude awarding Defendant summary judgment, since it constitutes evidence as to the underlying cause of Chrysler's alleged mistake of fact (i.e., the fact that two purchase orders were issued for the Cummins engines).

Applying, then, these standards to the facts at hand, the Court does not find either party to be entitled to judgment as a matter of law at this time. Although there is no dispute that the engines at issue are of U.S. origin, see Defendant's Statement of 12/15/99 (acknowledging that Chrysler has "recently (during the pendency of this litigation) provided the U.S. Customs Service with adequate documentary proof to demonstrate that the subject diesel engines were manufactured by Cummins U.S. in the United States"), there is a genuine issue as to Chrysler's knowledge at the time of importation.

In response to the Court's Order of January 14, 2000, asking Chrysler to identify exactly what evidence it has submitted to demonstrate that it was mistaken as to the true origin of the Cummins engines when it entered the Clubcabs into the United States, Chrysler identified four pieces of evidence: (1) Chrysler's very failure to claim the 9802 exemption on the engines; (2) deposition testimony of Gordon Heidecker concerning the confusion surrounding the purchase of the Cummins engines due to the launch of a new vehicle and Chrysler de Mexico's purchasing requirements; (3) deposition testimony of Don Rivait concerning the process Chrysler employs to compute and audit the 9802 value of its Mexican-made vehicles (and how the "failure of the process to capture the value of engines indicates that [Daimler Chrysler] made a mistake of fact as to the origin of the engines."); and (4) the October 15, 1991, letter Chrysler sent to Customs identifying its mistake in failing to make a 9802 claim for the value of the engines. In opposition, Defendant cites various evidence which it claims indicates that "the vehicle identification number ('VIN') and sales code 'ETB,' both of which were in the possession of Chrysler at the time of entry, provided information that the engines were manufactured by Cummins in the United States, and were the only engines for use in the Clubcab truck." Defendant's Statement of 01/21/00. "Consequently," the Government claims, "the VIN and 'ETB' code should have indicated to Chrysler that the engines were of United States origin at the time

of entry."  Id.

Upon reviewing this evidence, the Court is not convinced that the evidence "is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, 477 U.S. at 252.  While none of Chrysler's evidence goes directly to the issue of whether it (collectively) or any of its employees (individually) was mistaken as to the U.S. origin of the Cummins engines at entry, a reasonable fact-finder could draw inferences from this evidence  and the undisputed facts of this case (namely, the existence of Chrysler's 9802 system) to arrive at such a conclusion.  Similarly, a reasonable fact-finder could, based on the evidence identified by Defendant, come to the opposite conclusion.  Defendant's evidence suggests that there were means besides the 9804 report by which Chrysler's employees could have become aware of the U.S. origin of engines.  As such, a trier of fact could rationally conclude that Chrysler employees were either actually or constructively aware of the origin of the Cummins engines at entry, but simply failed to take action until months later.[16]  This is especially true in light of Chrysler's failure to date to submit any direct evidence concerning the actual knowledge of its employees.

In short, the Court finds there to be a genuine issue of material fact as to Chrysler's "knowledge" at the time of entry.  This state of facts precludes summary judgment for Chrysler and, absent other grounds for granting Defendant's Motion, similarly precludes summary judgment in its favor.  Accordingly, it is to the final arguments advanced by Defendant that the Court now turns.

---

[16] Some of Chrysler's own evidence could also support such a conclusion.  See Deposition of Don D. Rivait at 39 ("Q.  Okay.  Now, could you tell me exactly your recollection of why Chrysler didn't claim 9802 for the engines in issue in this case?  A.  No, I can't recall why.").

**2**

**Any Negligence by Chrysler in Arriving at its Initial Factual Belief
Is Irrelevant to Whether it Committed a "Mistake of Fact."**

As an additional basis for seeking summary judgment, Defendant claims that Chrysler acted negligently in initially determining the country of origin of the engines, and that such negligence precludes a finding that a "mistake of fact" occurred for purposes of § 1520(c)(1). According to Defendant, at the time of entry Chrysler's employee in charge of its 9802 system, Donald D. Rivait, negligently failed to consider relevant information (namely, sales codes on invoices and vehicle information numbers) which indicated the true origin of the Cummins engines. Defendant's Supplemental Memorandum at 7-8. In fact, Defendant argues, "Chrysler's entire 9802 program was negligently set up," since "[f]ailure to include the sales code and VIN into the 9802 program, both of which are not affected by erroneous purchase orders, amounts to a lack of reasonable care . . . ." Id. at 8.

At its heart, Defendant's argument is based on an assumption that negligence by an importer in initially determining a factual characteristic of a product may prevent an error from being a "mistake of fact" under 19 U.S.C. §1520(c)(1). This assumption, however, is without any apparent support in either the text of the statute or the relevant case law, and Defendant has failed to provide the Court with any such authority for its position.

As noted previously, § 1520(c)(1) provides a liberal mechanism for the correction of mistakes, since Customs has no interest in retaining duties that were erroneously paid on account of a factual mistake, clerical error, and other inadvertence not amounting to an error in the construction of a law. Adopting the position asserted by Defendant, however, would defeat this

purpose, since negligence may play a role in many, if not most, errant factual determinations by importers.  Thus, to recognize negligence as precluding a factual error from being a "mistake of fact" under § 1520(c)(1) would severely curtail the remedial reach of § 1520(c)(1) -- a result which this Court, absent authority to the contrary, declines to adopt.

In this regard, the Court takes particular note of Chrysler's argument that although "[s]everal cases in which importers established a mistake of fact involve actions that might be looked upon as initial negligence on the part of the importer in determining a factual characteristic[,] . . . [i]n these cases, the initial negligence did not preclude the errors from being mistakes of fact for purposes of 19 U.S.C. § 1520(c)(1).  Plaintiff's Supplemental Memorandum at 4-5 (citing C.J. Tower, supra, and Zaki Corp v. United States, 960 F. Supp. 350 (CIT 1997)).  That both this Court and the CAFC have, in C.J. Tower, Zaki and many other such instances, not even discussed whether negligence was the cause of the alleged factual errors, only further indicates that the question of initial negligence by an importer is simply irrelevant to whether a "mistake of fact" has been shown for purposes of § 1520(c)(1).

**3**

**"Negligent Inaction" by Chrysler After Discovering its Factual
Error Would Not Preclude it From Relief Under § 1520(c)(1)**.

The last point raised by Defendant is that Chrysler was negligent in failing to bring a timely challenge under § 1514 after discovering the true origin of the Cummins engines.  According to Defendant:

[A]lthough Chrysler had actual knowledge of the origin of the engines, it did not

provide Customs with the information necessary to establish the 9802 eligibility of these engines. Moreover, even after liquidation, Chrysler still had the opportunity to submit the required documentation during the protest period for the entries at issue here. Chrysler's simple failure to do so, while having actual knowledge of the origin of the engines and knowledge that the Manufacturer's Affidavit was a documentary requirement, plainly distinguishes the present case from C.J. Tower, and amounts to negligent inaction, precluding the application of [19 U.S.C. § 1520(c)].

Defendant's Supplemental Memorandum at 4-5.

While Defendant's argument is substantively different from its claim, discussed above, that Chrysler committed an "error in the construction of a law," the analysis is similar. In essence, Defendant's argument requires an importer who discovers (and can substantiate) its mistake of fact before the end of the ninety-day protest period following liquidation to protest its mistake during this period, or be punished for its delay. Such a requirement is not in the actual language of § 1520(c) and, it appears to the Court, is inconsistent with the explicit exception of § 1520 from the finality requirements of § 1514. Here, it is undisputed that Chrysler brought its error to Customs' attention within one year of liquidation; as such, Chrysler's actions were timely, and the Court need not inquire into the question of when, within this one-year period, Chrysler decided to make its § 1520(c) claim. To find otherwise would graft onto § 1520(c)(1) a requirement which does not appear in either the statute or its implementing regulations -- a result which the CAFC has stated would be clearly improper. See Aviall, 70 F.3d at 1250 (stating that, besides the requirements set out in the statute, "section 1520 provides no further limitation on errors, mistakes, or other inadvertence.").

In holding that it need not inquire into the issue of "negligent inaction" by Chrysler, the Court notes that the situation at bar is distinguishable from that considered in Executone. In

Executone, the CAFC, in finding that the importer had failed to show that it had actually committed a "mistake of fact," stated that

> Executone makes no attempt to explain why it failed to file Form A's until after the time for filing a protest had lapsed. Executone's "proof" of inadvertence falls woefully short and, if anything, establishes only that Executone acted negligently. Executone repeatedly asked Radix to file the Form A's. Radix, however, failed to do so. From the evidence currently in the record, it appears that Radix employees negligently failed to carry out Executone's instructions and Executone negligently failed to ensure that its agent timely filed the Form A's. Executone, by repeating its request, obviously knew the forms had not yet been filed, yet failed to act.

Executone, 96 F. 3d at 1390.

In its Supplemental Brief, Defendant argues that this analysis supports its argument that Chrysler should have filed a § 1514 protest following liquidation, and cannot now seek the benefits of § 1520(c). Although, in Executone, the CAFC recognized that the importer had acted negligently in failing to file its necessary forms until after the time for filing a protest had lapsed, it did so only as part of its overall finding that the plaintiff had not provided any evidence to show its alleged "mistake of fact" (i.e., to substantiate its claim that it erroneously believed that Form A's had been filed). As such, and as Chrysler accurately observes, "Executone stands only for the unremarkable proposition that an importer seeking reliquidation under § 1520 must present facts sufficient to establish that a mistake of fact, clerical error or other inadvertence has occurred. Executone failed to meet that burden and left the [CAFC] with nothing but evidence of Executone's inattention to an entry." Plaintiff's Supplemental Brief at 6.

In contrast, here Chrysler has submitted some evidence to show that it committed a mistake of fact in its initial entry. Should Chrysler carry its burden on this issue, and demonstrate at trial that it actually did make such a mistake, Chrysler will have established its

right to have one year from the date of liquidation to seek the correction by Customs of its

mistake of fact, as opposed to the ninety-day protest period following liquidation provided under

§ 1514.[17]  Executone, because it never demonstrated that it actually committed a mistake of fact,

was never entitled to this right in its case.


In short, the Court finds that neither of Defendant's "negligence" arguments, and the

evidence identified therewith, are relevant to the issue of whether Chrysler committed a

correctable "mistake of fact" for purposes of 19 U.S.C. § 1592 and 19 C.F.R. § 173.4.

---

[17] Had Chrysler only alleged and shown an "other inadvertence," however (as opposed to a "mistake of fact"), its subsequent failure to submit the required documents and file a protest within ninety days of liquidation might have precluded it from relief under § 1520(c)(1).  See Aviall, 70 F.3d at 1250 (holding that "repeated failures to respond to clear notice in the AT&T and Occidental cases fall outside the scope of inadvertence"); Ford Motor Co., 157 F.3d at 860 (stating that "'inadvertence' does not stretch so far as to encompass intentional or negligent inaction").

That an importer's failure to correct a known omission within ninety days of liquidation might deprive it of subsequent recourse to § 1520(c)(1), while such a failure would not have similar effect in the case of a known "mistake of fact," stems from the different breadth that these terms have been accorded.  Inadvertence has been recognized as "broader in scope than mistake," and has been defined as "an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake."  C.J. Tower, 68 Cust. Ct. at 22, 336 F. Supp. at 1399.  Given the scope of this definition, whether a plaintiff acted timely to correct its inattention or carelessness, after becoming aware of the error, must necessarily be considered in deciding whether the plaintiff committed a correctable "inadvertence."  To do otherwise would essentially give importers one year to submit proper documentation in every instance where they had been careless or inattentive at entry, regardless of other circumstances -- a result which would largely eviscerate many of Customs' reporting requirements.  See Aviall, 70 F.3d at 1250 (finding that "repeated failures to respond to clear notice . . . fall[s] outside the scope of inadvertence," and that decisions recognizing this fact "reflect a balance between the liberal scope of correction in section 1520 and the responsibilities of an importer to comply with Custom's lawful requirements").  In contrast, and in light of the more limited definition of what constitutes a "mistake of fact," an inquiry into the timeliness with which an importer sought to correct its factual error is independent from, and irrelevant to, whether an importer or Customs "underst[ood] the facts to be other than they are," C.J. Tower, 68 Cust. Ct. at 22, 336 F. Supp. at 1399.

Accordingly, the Court denies summary judgment for the Government and finds that a trial is necessary on the issue of whether Chrysler was mistaken as to the origin of the Cummins engines when it entered the Clubcab trucks into the United States.[18]

**IV**

**CONCLUSION**

For the foregoing reasons, the Court finds there to be genuine issues of material fact in dispute concerning (a) whether Chrysler de Mexico committed a clerical error or other inadvertence by not following Chrysler's purchasing policy; and (b) whether Chrysler itself committed a mistake of fact by being mistaken as to the U.S. origin of the Cummins engines when it entered the Clubcab trucks into the United States. The parties' respective motions for summary judgment are therefor denied.

_____

Evan J. Wallach, Judge

Date: February 7, 2000
New York, New York

---

[18] Under § 1520(c)(1) and 19 C.F.R. § 173.4(b)(2), an importer is only entitled to relief when its clerical error, mistake of fact, or other inadvertence is "adverse to the importer." There is no dispute that this requirement was met in this case. See Plaintiff's and Defendant's Joint Statement Pursuant To The Court's Order of January 14, 2000 (stipulating that "in the event that the court determines that there was a mistake of fact by Plaintiff, the alleged mistake of fact was 'adverse to the importer' for purposes of 19 U.S.C. §1520(c)(1) and 19 C.F.R. §173.4(b)(2)"). Thus, there is no need to address this issue at trial.