**Slip Op. 00-162**

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| BLACK & WHITE VEGETABLE CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Court No.: 96-11-02568 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

[Plaintiff's motion for summary judgment GRANTED.]

Decided:  December 12, 2000

Givens and Associates, PLLC (Robert T. Givens), for Plaintiff.

David W. Ogden, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, Department of Justice, Amy M. Rubin, Trial Attorney; Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

## OPINION

**WALLACH, Judge.**

## I

### Preliminary Statement

Plaintiff, Black & White Vegetable Company, Inc. ("Black & White"), sued to challenge the refusal by the United States Customs Service to reliquidate certain shipments of "Persian limes" imported by Black & White.  Plaintiff now moves for summary judgment, claiming that reliquidation is required under 19 U.S.C. 1520(c) (1988) because a mistake of fact regarding the botanical name of the subject limes resulted in misclassification.  The Government admits that

1

the various Customs import specialists involved were mistaken as to the botanical name of the limes, but contends the mistake is one of law rather than of fact, and is therefore barred from reliquidation under 19 U.S.C. § 1520(c). On this basis, the Government cross-moves for summary judgment.

Because the proper botanical classification of an imported botanical item is not part of the legal analysis for classification purposes, the court denies the Government's motion and grants the Plaintiff summary judgment.

## II

### Background

### A. Subject Merchandise

At issue are fifty-nine entries of "Persian limes" imported from Mexico and entered at the Laredo California Customs facility between July 1, 1993 and February 23, 1993 and liquidated between October 22, 1993 and June 10, 1994. The parties agree that both Customs and the entire lime importing community were under the mistaken belief the limes were of the "Citrus aurantifolia" variety, when, in fact, they were actually of the "Citrus latifolia" variety. As a result, the limes were erroneously entered by the Plaintiff's importer, under 0805.30.40 of the Harmonized Tariff Schedule of the United States ("HTSUS,") which referred to "[L]imes (Citrus Aurantifolia)," *eo nomine,* at a duty rate of 2.2 cents per kilogram during 1993 and 1.9 cents per kilogram during 1994.[1] Customs subsequently classified and liquidated the limes under this

_____

[1] Subheading, 805, HTSUS, provided for:
   0805............Citrus fruit, fresh or dried:
   0805.30.......Lemons (Citrus limon, Citrus limonum) and limes (Citrus aurantifolia):

subheading and imposed duties accordingly.  However, limes of the <u>Citrus latifolia</u> variety, should have been entered under the subheading 0805.90.00, HTSUS, at a duty rate of .9% <u>ad valorem</u> in 1993 and duty free in 1994.[2]

**B.  Plaintiff's Reliquidation Request**

On June 30, 1994, Administrative Message 94-0661 ("Message") was posted to the OTO5 Bulletin Board.  The Message gave notice of statistical breakout changes to subheading 0805.90.00 and added a new statistical breakout, 0805.90.10, HTSUS, which referred to <u>Limes, Citrus latifolia</u>, *eo nomine*.  This new subheading covers "Tahitian, Persian Limes and Other <u>Limes</u> of the <u>Citrus latifolia</u> Variety."  Thus it was discovered that, until then, Persian Limes, which are of the <u>Citrus latifolia</u> variety, should have been entered under the basket subheading 0805.90.00, HTSUS, as "Other."  Following this discovery, Customs and the importing community began entering Persian Limes under the new subheading 0805.90.10, HTSUS.

More than ninety days later, but within one year of liquidation, Plaintiff, on October 21, 1994, requested that Customs reliquidate these entries under the new subheading 0805.90.10. Customs treated this request as a 19 U.S.C. § 1520(c) protest and denied it on February 8, 1995, asserting that Black & White had failed to satisfy the criteria of § 1520.  Plaintiff then expressly filed a request for reliquidation under § 1520(c) on May 9, 1995 which was denied by Customs on April 12, 1996. <u>See</u> Customs Headquarters Ruling 226453 ("HQ 226453").  Again, although

---

0805.30.40...Limes

[2]  Subheading 0805.90.00, HTSUS, provided for
0805...............Citrus fruit, fresh or dried:
0805.90.00.....Other, including kumquats, citrons and bergamots

conceding that Plaintiff's claim could have been addressed under 19 U.S.C. § 1514 within ninety days of liquidation, Customs denied that Plaintiff was entitled to relief under § 1520(c), because Plaintiff had not filed its reliquidation requests within the ninety-day time limit imposed by § 1514.[3] Id. at 7. Ultimately, Plaintiff commenced the current action to challenge Customs' refusal to reliquidate the entries under § 1520(c).

# III

## Arguments

### A. Plaintiff Argues There is a Correctable Mistake of Fact

The Plaintiff avers that a mistake was committed by its broker, Jimmy Santos, resulting in the erroneous entry of the limes under subheading 0805.30.40, HTSUS. Moreover, the Plaintiff asserts Customs committed the same mistake. See Plaintiff's Memorandum In Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo") at 8. While both parties agree that the mistake concerns the proper botanical designation of the limes as "Citrus latifolia" as opposed to "Citrus aurantifolia," the Plaintiff, unlike the Defendant, contends that the mistake at issue is factual in nature. Plaintiff's Memo at 2-4. The Plaintiff further argues that had the parties been aware of the correct botanical designation of the limes, they would have properly entered the limes as "other" under 0805.90.00, HTSUS, and points to the Defendant's admission that "if the involved import specialist had understood the meaning of the term 'Citrus aurantifolia'. . .the goods would have been classified as other." Defendant's Answer ¶ 12; Id. at ¶

---

[3]    In relevant part, 19 U.S.C. § 1514(c)(3) provides that "[a] protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before . . . notice of liquidation or reliquidation . . . ."

4

8; see also Defendant's Response to Plaintiff's Statement of Material Facts As To Which There Are No Genuine Issues To Be Tried ¶ 20.

Secondly, Plaintiff recognizes that mistakes of law are correctable only by timely protest, but maintains that it is still entitled to reliquidation through 19 U.S.C. § 1520(c)(1) (1994). Specifically, the Plaintiff asserts that subsequent to the ninety-day time limit for protesting the liquidation, but within one year after such liquidation, the broker learned of the true nature of the merchandise and timely filed for relief and refund under § 1520(c)(1) by seeking reliquidation of the entries and refund of the excess duties that had been paid. Plaintiff's Memo at 10.

### B. Defendant Argues There is a Mistake of Law Which is Not Correctable Under § 1520(c)(1)

Defendant argues that Plaintiff's claim for reliquidation under 19 U.S.C. § 1520(c)(1) is precluded because the "'mistake' in this case simply does not amount to a mistake of fact." Defendant's Memorandum In Support of Its Cross-Motion For Summary Judgement And In Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memo") at 9 (citations omitted).  Rather, Defendant asserts that "[a] determination by Customs as to the classification of merchandise is a conclusion of law." Id. at 6.  The Government also states that "[a]bsent specific circumstances to establish that the classification error actually did result from a mistake of fact," the Plaintiff's claim is merely "is nothing more than a mere challenge to classification, that is, an error in the construction of law that cannot be remedied by a section 1520(c)(1) claim." Id. at 7 (citations omitted).  As such, the Defendant contends that the Plaintiff should have filed a protest under 19 U.S.C. § 1514 within ninety days of liquidation. See Id. at 13.

Secondly, the Defendant interprets previous decisions of this court to limit mistakes of

5

fact to those that stem from the "physical nature" of the goods at issue. Id. at 9 (emphasis omitted). The Defendant argues that this case is distinguishable from these previous decisions as here "the parties had complete knowledge of the physical nature of the limes in [sic] issue, but misclassified them because they did not understand the meaning or scope of the term 'Citrus Aurantifolia' used in the relevant tariff provision." Id. at 9 (emphasis omitted).

Finally, Defendant contends that by failing to determine whether the limes fell within the Latin botanical designation which prefaced the erroneous tariff provision, Black & White and its broker failed to exercise "reasonable care. . .in entering the limes and filing the relevant papers with Customs." Id. at 11. As a result, the Defendant further contends that even if the subject mistake was factual in nature, "this mistake was the result of the failure on the part of Black & White and its broker to comply with their own legal responsibilities." Id.

## IV

### Standard of Review

### A. Summary Judgment

Under USCIT R. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988). This may be done by producing evidence showing the lack of any genuine issue of material fact or, where the non-moving party bears the burden of proof at trial, by demonstrating that the nonmovant has failed to make a sufficient showing to

6

establish the existence of an element essential to its case.  Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

To successfully oppose a properly supported motion for summary judgment, the nonmovant may not simply rest on its pleadings. Rather, it must produce evidence "by affidavits or as otherwise provided in [USCIT R. 56]" which "set forth specific facts showing that there is a genuine issue for trial."  USCIT R. 56(f); see also Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987) ("[T]he party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient.").

In determining whether the parties have met their respective burdens, the court does not "weigh the evidence and determine the truth of the matter," but simply determines "whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In so doing, the Court views all evidence in a light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Avia Group Int'l, 853 F.2d at 1560.

**B. Summary Judgment and the "Presumption of Correctness"**

The government's classification decision is presumed to be correct, see 28 U.S.C. § 2639(a)(1) (1994), and the party challenging the decision has the burden of overcoming the statutory presumption by a preponderance of the evidence. See St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 769 (Fed. Cir. 1993).  Where however, there are no material facts in dispute and only questions of law remain, Plaintiff must show legal error to overcome the presumption of correctness. See Commercial Aluminum Cookware Co. v. United States, 938 F. Supp. 875, 881 (CIT 1996).  If the Court finds, because of evidence or other authority presented

7

by Plaintiff, that the presumption has been overcome, this Court must reach the correct classification on its own or after remand.  See Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

# V

## Analysis

### A. Reliquidation

19 U.S.C. § 1514 establishes a procedure under which an importer may protest the classification of merchandise when the importer believes Customs has misinterpreted the applicable law and improperly classified the importer's merchandise.  See 19 U.S.C. § 1514 (1988); see also Boast, Inc. v. United States, 17 CIT 114, 116 (1993).  In general, under § 1514, unless a protest is filed within ninety days of notice of liquidation, decisions regarding tariff treatment of merchandise are "final and conclusive upon all persons." See 19 U.S.C. § 1514(a), (c)(2) (1988).

However, 19 U.S.C. § 1520(c)(1) expands this window of relief by allowing reliquidation of imported merchandise to correct clerical errors, mistakes of fact, or other inadvertencies not amounting to errors of law, if they are brought to the attention of the appropriate customs officer within one year of the date of liquidation.  See 19 U.S.C. § 1520(c)(1) (1988).

Nonetheless, § 1520(c)(1) is not a broad brush remedy for all decisions that are adverse to the importer, but rather only "offers 'limited relief in the situations defined therein.'" PPG Indus., Inc. v. United States, 7 CIT 118, 123 (1984) (citation omitted).  Section 1520(c)(1) provides in relevant part:

(c)     Reliquidation of entry

Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct --

(1) a clerical error, *mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence*, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction.

19 U.S.C. § 1520(c)(1) (1988) (emphasis added).

In addition, case law interpreting this statute emphasizes that "[s]ection 1520(c)(1) does not afford a second bite at the apple to importers who fail to challenge Customs' decision within the 90-day period set forth in § 1514 . . . . [U]nder no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514." ITT Corp. v. United States, 24 F.3d 1384, 1387 n.4 (Fed. Cir. 1994). See Boast, Inc., 17 CIT at 116 ("It is well-established . . . that § 1520(c)(1) 'is not an alternative to the normal liquidation-protest method of obtaining review [under § 1514], but rather affords limited relief where an unnoticed or unintentional error has been committed.'") (quoting Computime, Inc. v. United States, 9 CIT 553, 556, 622 F. Supp. 1083, 1085 (1985) (further quotation and citations omitted)).

**B.**

**Failure to Protest Within Ninety Days of Liquidation Under 19 U.S.C. § 1514 Does Not Preclude Recovery Under 19 U.S.C. § 1520**

Plaintiff maintains that it could not have filed protests against the liquidations under 19 U.S.C. § 1514 (1988), as neither it nor its broker were apprised of their mistake until after the statutory period of ninety days had elapsed for all fifty-nine entries. Plaintiff's Memo at 10; see also Plaintiff's Second Response to Defendant's First Set of Interrogatories and Requests for

9

Production ("Plaintiff's Second Interrogatory Response"), Nos. 2(a)(i), 2(a)(ii), 5(a); see also

Plaintiff's Affidavit and Response to the Court's April 25, 2000 Order, ("Plaintiff's Affidavit"),

Exhibits D & E. Hence Plaintiff was time-barred from filing any protest under that section.

Instead, Plaintiff brings its request for reliquidation pursuant to 19 U.S.C. § 1520(c) (1988),

arguing its broker and Customs both made mistakes of fact which were adverse to the importer,

manifest from the record or established by documentary evidence and brought to the attention of

Customs within one year after the dates of liquidation as required by 19 U.S.C. § 1520(c)(1)

(1988).

Defendant nonetheless asks this Court to infer that "Black & White and/or its importer

had (or could have had) sufficient knowledge to file timely protests against liquidation" of the

entries that were liquidated within ninety days of the Message.[4] Defendant's Memorandum at 13.

On this basis, Defendant maintains Plaintiff's protests for these entries should have been properly

pursued under 19 U.S.C. § 1514 (1988) and "would have been timely if filed between June 30,

1994 (for the April 1 liquidations) and September 8, 1994 (for the June 10 liquidations)." Id. As

a result, Defendant asserts Plaintiff's current § 1520 request is untimely. However the Defendant

---

[4] Defendant refers to 10 entries, in particular, that were liquidated between April 1st and June of 10th of 1994.

Entry Numbers
439-0041080-4
439-0041156-2
439-0041248-7
439-0041385-7
439-0041496-2
439-0041617-3
439-0038282-1
439-0038372-1
439-0040950-9
439-0041693-4

10

has failed to cite any authority for this proposition and has not challenged the Plaintiff's affidavit testimony. The court declines to promulgate a rule that would automatically establish actual knowledge of the mistake on the part of the protestant on the date an administrative bulletin is circulated.

Nonetheless, had the Plaintiff actually become aware of the mistake as of June 30, 1994, as the Defendant suggests, it would still be able to proceed with the current action. The above limitations on the operation of § 1520(c) do not bar all requests under § 1520(c) that could have been filed, but were not, under § 1514. Rather, a party cannot resort to "the provisions of § 1520(c)(1). . .*to excuse the failure to satisfy the requirements of § 1514.*" ITT Corp., 24 F.3d at 1387 n.4 (emphasis added). The flipside of this proposition, that a party's failure to file a protest within ninety days of liquidation under § 1514, alone, does not bar the party from seeking reliquidation under § 1520, was confirmed by this court in Chrysler Corp. v. United States, 87 F.Supp.2d 1339 (CIT 2000). There, the Government argued that since Chrysler was aware that a mistake had been committed within ninety days of liquidation and possibly prior to liquidation, Chrysler was obligated to pursue a claim under § 1514 and was completely barred from pursuing any claims under § 1520. The court rejected the Government's argument, stating:

> While Defendant's position may well encourage importers, such as Chrysler, to correct factual errors at the earliest possible opportunity, it has no support in the actual language of § 1520(c)(1). . . . On its face nothing in this language or in Customs' implementing regulations supports Defendant's argument that a party loses its ability to challenge an error upon the expiration of the protest period, or that a mistake of fact, clerical error, or other inadvertence somehow becomes an error in the construction of a law if not challenged within ninety days of liquidation.

Id. at 1344.

Although Defendant cites several other cases that appear to run contrary to the conclusion

11

reached above, they do not undermine <u>Chrysler's</u> holding. In particular, the Defendant quotes language from <u>ITT</u> and <u>Degussa Canada Ltd. v. United States</u>, 87 F.3d 1301 (Fed. Cir. 1996) in support of its contention that failure to file a valid § 1514 protest within 90 days of liquidation forecloses a § 1520(c)(1) request for reliquidation. Neither case, however, dealt squarely with the mechanics of § 1520(c)(1) vis a vis § 1514 as discussed here. For example, in <u>ITT</u>, the Federal Circuit dealt with the issue of whether the Plaintiff was barred under § 1520 from presenting further evidence at trial to demonstrate that a mistake of fact occurred, where such mistake was not apparent from the evidence at the time of entry. See <u>ITT</u>, 24 F.3d at 1387-88. In <u>Degussa</u>, the Federal Circuit's pronouncement cited by Defendant that "the classification error could and should have been corrected under the existing law governing the protest procedure" was made in relation to the mistake at issue, which was legal in nature and therefore, by definition, properly addressed under § 1514, not § 1520. <u>Degussa</u> 87 F.3d at 1304. Hence, Defendant's reliance on these cases is misplaced.

As § 1520(c) states: "*Notwithstanding a valid protest was not filed*, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry. . . ." 19 U.S.C. § 1520(c)(1988) (emphasis added). As written and interpreted, § 1520 simply bars relief for any inadvertence that stems from a mistake of law or for any request for relief not filed under this section within one year of liquidation. The court sees no reason to depart from the clear language of the statute.

**C.**

**Assuming Arguendo that Reasonable Care Is a Prerequisite For Recovery Under § 1520(c),**

**Black & White Did Not Fail to Exercise Reasonable Care**

12

Defendant correctly points out that Customs law not only requires that importers and their agents "use reasonable care in completing an entry 'by filing with the Customs Service the declared value, classification and rate of duty applicable to the merchandise . . .,' but also requires customs brokers to exercise due diligence in preparing and filing records relating to any customs business matter." Defendant's Memorandum at 11 (quoting 19 U.S.C. § 1484(a)(1)(B)) (citing 19 C.F.R. § 111.29). Defendant however has failed to demonstrate that the exercise of reasonable care is actually a prerequisite to recovery under § 1520(c). Nonetheless, even assuming arguendo that such a prerequisite exists, the Defendant is unsound in its further assertion that Black & White and its importer did not exercise reasonable care by failing to "verify that the imported merchandise was encompassed by the botanical name that was included as an express term of the 'lime provision,'" despite the fact this provision was the only one that expressly referred to limes. Id. at 11-12.

This argument fails given the general atmosphere of ignorance that surrounded the limes' proper botanical designation. See Plaintiff's Affidavit, Exhibits D & E. Certainly, "as the determination of what constitutes 'reasonable care' in a given context is made by reference to the care exercised by reasonably prudent persons similarly situated," it is difficult to follow Defendant's reasoning to the conclusion it has drawn, when even the Customs import specialists were wrong about the type of limes being imported. Plaintiff's Memorandum in Response to Defendant's Cross-Motion For Summary Judgment at 12. Hence the court concludes that the mistake was not the product of any failure to exercise reasonable care.

## D.

## Black & White Has Satisfied the Required Elements Under 19 U.S.C. § 1520(c)

13

A successful claimant under 19 U.S.C. § 1520(c) must satisfy three conditions in order to reliquidate an entry to correct a "mistake of fact." The implementing regulation of § 1520(c) requires that the mistake at issue is: (1) not an error in the construction of a law; (2) adverse to the importer; and (3) manifest from the record or established by documentary evidence. See 19 C.F.R. §§ 173.4(b)(1)-(3) (1992).

**1**

**Black & White Did Not Make an "Error in the Construction of a Law."**

As discussed, Defendant argues that summary judgment is appropriate because Black & White and the Customs broker both allegedly committed an error in the construction of a law which, based on the plain language of 19 U.S.C. § 1520(c)(1), is precluded from recovery. If the mistake at issue was indeed one of legal construction, it would dispose of both parties' motions. Therefore the court will initially focus on whether the facts of this case support Defendant's argument. See Ford Motor Co. v. United States, 157 F.3d 849, 858 (Fed. Cir. 1998) ("If an error qualifies as an 'error in the construction of a law,' that inquiry is dispositive, but if it does not so qualify, the party seeking correction must still show that its error fits within one of the three correctable categories.").

Section 1520(c) permits reliquidation in order to correct "a clerical error, mistake of fact, or other inadvertence . . . not amounting to an error in the construction of a law." Although not specifically defined by statute or regulation, the distinction between a mistake of fact and an error in the construction of a law for purposes of § 1520(c) has evolved in case law:

> [M]istakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to. Mistakes of law, on the other hand, occur where the facts are known, but their legal consequences are not known or are believed to be different than they really are.

14

Executone Information Sys. v. United States, 96 F.3d 1383, 1386 (Fed. Cir. 1996) (quoting

Hambro Automotive Corp. v. United States, 66 C.C.P.A. 113, 119, 603 F.2d 850, 855 (1979));

Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 22, 336 F. Supp. 1395, 1399

(1972), aff'd 61 C.C.P.A. 90, 499 F.2d 1277 (1974) ("A mistake of fact exists where a person

understands the facts to be other than they are, whereas a mistake of law exists where a person

knows the facts as they really are but has a mistaken belief as to the legal consequences of those

facts.") (citation and internal quotations omitted); Ford Motor Co., 157 F.3d at 857 ("[F]or an

error to be correctable, it must . . . not qualify as an 'error in the construction of a law.'").

Defendant, relying on the court's decisions in Taban Co. v. United States, 21 C.I.T. 230,

960 F. Supp. 326 (1997) and Zaki Corp. v. United States, 21 C.I.T. 263, 960 F. Supp. 350 (1997),

argues that a mistake of fact is limited to mistakes that flow from the "physical nature" of the

goods at issue. Defendant's memo at 9.  The Defendant stresses that in both cases, the court

found that there was a mistake of fact that clearly stemmed from some misapprehension

regarding the *physical nature* of the subject goods.  Indeed in both cases, the court determined

that a mistake of fact had been committed by the Plaintiff's broker, as the broker misclassified

imported stereo tape deck recorders on the mistaken belief that the imported units were merely

radio broadcast receivers, not coupled with tape deck recorders.  In short, the parties involved

were not aware of a critical fact concerning the subject merchandise.  Defendant however, argues

that "[t]his case is distinguishable from Taban and Zaki in that, here the parties had complete

knowledge of the *physical nature* of the limes at issue, but misclassified them because they did

not understand the meaning or scope of the term 'Citrus aurantifolia' used on the relevant tariff

provision." Id. (emphasis added).

Although these two decisions speak in terms of and ultimately turn on the "physical

15

nature" of the goods, this alone does not warrant imposing such a limitation upon what constitutes a "mistake of fact." Defendant errs in placing too great a significance on these decisions which were clearly limited to their particular facts. Nothing in § 1520 requires that the proffered mistake of fact be limited to the physical nature of the subject merchandise; this is echoed in the relevant case law. Indeed, in Chrysler, for example, a mistake of fact was determined to exist which had nothing to do with the physical nature of the subject automobile engines that were erroneously classified. Rather, the mistake resulting in the misclassification of the engines concerned the engines' country of origin and not the engines themselves. See Chrysler Corp., 87 F.Supp.2d 1339 (CIT 2000). This runs directly contrary to the Defendant's argument, as the number of pistons, valves, or any other features of the physical engine itself did not contribute to the mistake.

Moreover, in C.J. Towers & Sons, 68 Cust. Ct. 17, 336 F. Supp. 1395, which was cited in Zaki as "a leading case discussing what constitutes a mistake of fact sufficient to fall within the scope of Section [1]520(c)," the Customs court found a mistake of fact where both the Customs officer and the importer were unaware that the imported merchandise was considered "emergency war materials" and was therefore entitled to duty-free treatment. Zaki 21 C.I.T. at 274, 960 F. Supp. at 359. Again the mistake had nothing to with the physical nature of the merchandise but was nonetheless responsible for the misclassification. Hence, although Zaki and Taban may have employed the phrase "physical nature" it is doubtful that either decision intended to restrict the nature of "mistakes of fact."

Therefore the relevant inquiry probes not into the physical nature of the goods, but rather whether a fact of any nature was at the heart of the committed mistake. As stated by the Plaintiff: "[t]he facts respecting the botanical variety of a given lime are facts obtained by associating the

16

knowledge one has about the apparent physical characteristics of the lime with the corresponding botanical classification as determined by competent taxonomists. <u>The correct botanical variety for a certain fruit is a fact, nevertheless</u>." Plaintiff's Response Memo at 8 (emphasis in original). The court agrees with this analysis. Accordingly, Black & White's mistake was based on lacking factual knowledge, namely the limes' proper botanical designation at the time of entry.

Furthermore, there can be no doubt that the subject mistake is responsible for the misclassification of the limes. Throughout its pleadings and papers, Black & White avers the "pervasive mistake of fact has resulted in many thousands of misclassified entries" by both the industry and Customs. Plaintiff's Memorandum at 5. As a result, Black & White did not seek the more favorable duty rates that were available to it under subheading 0805.90.00, HTSUS, when it entered the limes into the United States. Moreover, the Defendant has admitted and maintained that "if the involved import specialist had understood the meaning of the term 'citrus aurantifolia'. . .the goods would have been classified as other." Defendant's Answer ¶ 12; <u>see also</u> <u>Id.</u> at ¶ 8; Defendant's Response to Plaintiff's Statement of Material Facts As To Which There Are No Genuine Issues To Be Tried ¶ 20. This is precisely the kind of scenario that is encompassed by a mistake of fact - Black & White as well as Customs believed the limes' botanical designation to be different than it really was and therefore classified the limes under the more burdensome tariff provision.

**2**

**The Misclassification of the Limes Resulted in an Unduly High Tariff Rate Adverse to the Importer**

17

The regulation also requires that the mistake of fact be "adverse to the importer." 19 C.F.R. § 173.4(b)(3) (1992). It is clear that the mistake at issue has forced the Plaintiff to assume a higher than necessary tariff burden. Specifically, Plaintiff, during 1993, would have paid a .9% ad valorem rate under 0805.90.00, HTSUS, as opposed to 2.2 cents per kilogram under 0805.30.40, HTSUS. Similarly, during 1994, Plaintiff would have paid no duty at all under 0805.90.00, HTSUS, as opposed to 1.9 cents per kilogram under 0805.30.40, HTSUS. Therefore the Plaintiff has satisfied this element.

### 3

### Manifest From the Record or Established by Documentary Evidence

Finally, the regulation requires that the mistake be "manifest from the record or established by documentary evidence submitted to the appropriate customs officer." 19 C.F.R. § 173.4(b)(3) (1992).[5] As previously mentioned, a "mistake of fact" under § 1520(c)(1) is routinely recognized when "(1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to." Executone, 96 F.3d at 1386 (quoting Hambro, 66 C.C.P.A. at 119, 603 F.2d at 855).

As the Defendant concedes, if Black & White has "submitted admissible evidence demonstrating that neither Black & White nor its broker knew that the actual botanical designation of the imported limes was not the designation contained in subheading 0805.30.40, HTSUS, then the Court . . . only need[s] to determine whether such ignorance, when it resulted in the broker entering the limes under the wrong tariff provision, constituted a mistake of fact or an

---

[5] Arguably however, the First Circuit's holding in ITT Corp., 24 F.3d 1384 dispensed with this requirement. Nonetheless, the elements of this requirement are satisfied here.

error in the construction of a tariff provision." Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply Memo") at 6. And as previously discussed, the court has concluded that the mistake at issue was indeed factual in nature and not an error in the construction of law. Hence the Plaintiff need only demonstrate that it was genuinely mistaken as to the proper botanical designation of the limes.

The court notes that Defendant's concern that "the signature of the Plaintiff's former president Douglas McIntyre [certifying Black & White's interrogatory responses] suffices only to demonstrate what Douglas McIntyre himself knew or did not know at a particular time" and not whether "any other employee of plaintiff or its customs broker possessed knowledge at the relevant time to support or contradict the claims made in Black & White's complaint," is allayed by Black & White's subsequent submission of affidavits from McIntyre and Jimmy Santos, the broker. See Plaintiff's Second Interrogatory Response, Nos. 2(a)(i), 2(a)(ii), 5(a); see also Plaintiff's Affidavit, Exhibits D & E. As the Defendant has acknowledged, an affidavit made in accordance with USCIT Rule 56(f) "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. . . ." USCIT Rule 56(f); see Defendant's Reply Memo at 5.

In addition, the Defendant has failed to offer any competent evidence to counter Black & White's assertion that it and its importer were mistaken at the time of entry as to the proper botanical designation of the limes. Although the Defendant has pointed to several items that might have served to correct Plaintiff's mistaken belief prior to entry of the limes, it offers no proof that such items actually did correct Plaintiff's mistaken belief. For example, Defendant

19

stresses that the entry documentation specifically identifies the limes as "Limon Persa" or "Mexican seedless limes." Defendant's memo at 8-9. However, such invoices were not sufficiently informative to contravene Plaintiff's affirmative evidence that it was mistaken regarding botanical classifications; it merely restated what Plaintiff already knew-that these were Persian Limes as opposed to Key Limes.

Moreover the court is satisfied that the submitted affidavits establish that a mistake for purposes of § 1520(c) was committed. In interpreting the definition of "mistake of fact" under § 1520(c), the <u>Chrysler</u> court stated that it "does not require a plaintiff to demonstrate evidence of the underlying <u>cause</u> or <u>reason</u> for its mistake of fact, and case law does not appear to support of [sic] such a requirement." <u>Chrysler Corp.</u>, 87 F.Supp.2d at 1352 (emphasis in original). Hence the Plaintiff need only demonstrate "that either the importer or Customs had a mistaken belief as to the correct state of facts."[6] <u>Id.</u>

Although McIntyre's affidavit may not represent the knowledge of the employees beneath him, in conjunction with the broker's affidavit, it sufficiently demonstrates that the Plaintiff committed a mistake of fact.[7] As the broker acts as the importer's agent in the classification

---

[6] The quoted language is the second prong of a two prong mistake of fact standard articulated by the court. The first prong is omitted as it does not bear on the fact that the plaintiff is not required to show that both it and Customs were mistaken as to the goods at issue. "Rather, courts have required a plaintiff to demonstrate, from the entry documents or other evidence, only two points in order to substantiate its "mistake of fact": (a) the correct state of facts; and (b) that either the importer or Customs had a mistaken belief as to the correct state of facts." <u>Id.</u>

[7] Black & White's former president, Douglas McIntyre states: "I did not learn until mid-1994 that the Persian limes (which comprised 100% of my lime imports) were/are in fact Citrus Latifolia limes. Having previously understood that these Persian limes were of the Citrus Aurantifolia variety, I always entered my Persian limes correctly, I believed, as such. At the time, I was never corrected by Customs officials or my Customs broker(s). Instead, I understood that they, too, had the same mistaken view that my imported Persian limes were of the Citrus

20

process and serves as liaison with Customs, a mistake on its part will clearly result in an erroneous entry, hence supporting the affidavits' assertion that a mistake of fact occurred. In addition, by further demonstrating that a general state of confusion regarding the limes existed, Customs' admission that it committed the same mistake also supports the affidavits. Finally, the court takes note of the fact the affidavits were uncontradicted. Therefore on the basis of the uncontradicted affidavits, in conjunction with the Plaintiff's interrogatory responses, the court is satisfied that both Black & White as well as its broker were genuinely mistaken as to the proper botanical designation of the limes at the time of entry. Accordingly, the court needs to pursue its analysis no further.

# VI

## CONCLUSION

Taxonomical classification is inherently factual; whether an import be fish or fowl, lemon or lime is a question resolved by qualities manifest in its nature. The misidentification here was derived from a misapprehension of the relation of those qualities to a taxonomical system, not one of legal classification.

---

Aurantifolia variety." Plaintiff's Affidavit, Exhibit D.

Black & White's broker, Jimmy Santos, states: "I did not learn until mid-1994 that the imported Mexican Persian limes (which comprised 100% of the lime imports) were/are in fact Citrus Latifolia limes. I believe that I learned about the mistake of fact from someone at Customs. I am not sure how Customs learned that we had all been mistaken for years, but it probably occurred when the tariff changed [sic] became effective mid-1994, listing two lime varieties, and Customs started looking into it and realized that they, we and everyone else involved had been mistaken in our prior belief that the imported Mexican Persian limes were of the Citrus Aurantifolia variety." Plaintiff's Affidavit, Exhibit E.

21

For the foregoing reasons, Plaintiff's Motion For Summary Judgment is granted in full, and Defendant's Cross-Motion For Summary Judgment is denied.

_____
Evan J. Wallach, Judge

Dated:  December 12, 2000
        New York, New York

# ERRATA

<u>Black & White Vegetable Co. v. United States of America</u>, Court No. 96-11-02568, Slip Op. 00-162, dated December12, 2000

- On p. 2, change "Laredo California" to "Laredo Texas".
- On p. 2, change "February 23, 1993" to "February 23, 1994".

January 11, 2001