Slip Op. 01 - 112

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | : | |
| SUNDERLAND OF SCOTLAND, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Before: MUSGRAVE, JUDGE** |
| | : | |
| THE UNITED STATES, | : | Court No. 97-04-00680 |
| | : | |
| Defendant. | : | |
| | : | |

[On cross motions for summary judgment on whether there was mistake of fact or other inadvertency in classification of pullovers/jackets/anoraks, judgment for defendant.]

Decided: August 29, 2001

*Elon A. Pollack, P.C.*, Los Angeles, California (*Elon A. Pollack* and *Eugene P. Sands*), for the plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, (*Amy M. Rubin*); *Yelena Slepak*, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for the defendant.

## OPINION

Before the Court are Rule 56 cross-motions for summary judgment on whether there is a cognizable mistake of fact, clerical error, or inadvertence in entry of "pullover" garments for which reliquidation under 19 U.S.C. § 1520(c)(1) is appropriate. The plaintiff invoked jurisdiction under 28 U.S.C. § 1581(a) to commence this action, however that properly depends on whether its claim is colorable. *See NEC Electronics U.S.A., Inc. v. United States*, 13 CIT 214, 709 F. Supp. 1171 (1989); *Computime, Inc. v. United States*, 9 CIT 553, 622 F. Supp. 1083 (1985). Accordingly, the Court considers the defendant's motion one of dismissal pursuant to Rule 12(b).

The parties aver the following.  In 1992, the plaintiff obtained a binding ruling letter from the U.S. Customs Service ("Customs") on the proper classification of styles of pullovers, No.1111, No.1114,[1] and No. 1117 (the "Styles").  Customs determined that the Styles met AATCC Test Method 35-1985 for "water resistance"[2] and that the proper classification was under HTSUS 6201.93.3000, providing for other men's anoraks, windbreakers and similar articles with a duty rate of 7.6% *ad valorem.  See* NYRL 876026 (Sep. 4, 1992).  The plaintiff commenced importation of the Styles accordingly.  *See* Pl.'s Separate Statement of Undisputed Material Facts ("Pl.'s Statement") ¶¶ 1 & 2.

Subsequently, it was determined that samples of Styles taken from a shipment in July 1993 into the Port of Los Angeles ("LAP") did not meet the AATCC 35-1985 test for water resistance and the Styles were reclassified.  *See id.* ¶ 3; Pl.'s Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pl.'s Mem.") at 2.  The plaintiff avers that on or about January 24, 1994, a Customs Import Specialist ("CIS") telephoned the plaintiff's customs broker, Mr. Jordan, and directed him to continue to classify future shipments of Styles as not water resistant until such time as NYRL 876026 is revoked.[3]  Pl's Statement ¶ 5; Pl.'s Mem. at 4.  The plaintiff further avers

---

[1]  The defendant requests that the Court limit any decision here to style Nos. 1111 and 1117, since style No. 1114 does not appear on any of the commercial invoices subject to this action. Defendant's Memorandum in Support of Its Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Def's Mem") n.1.

[2]  As defined in the Harmonized Tariff Schedule of the United States ("HTSUS") at Chapter 62, Additional Note 2.

[3]  The defendant denies, and avers upon information and belief that the CIS told Mr. Jordan that as a result of HQ 955909, effective June 7, 1994, LAP would require the plaintiff to classify all non-water resistant items of the Styles as non-water resistant, and it also avers that any dispute with
(continued...)

that Styles subject to this action and covered by entry no. 286-0549984-8 (May 16, 1994) and entry

no. 231-4914947-0 (June 5, 1994) were so classified.  Pl.'s Statement ¶ 6.  Attached to the Jordan

Declaration are copies of documents purporting to be business records which indicate anticipation,

either on the part of Mr. Jordan or Customs or both, that such would occur in future. *See* Pl.'s Mem.,

Exs. A & B.

LAP requested Customs Headquarters to revoke NYRL 876026 on the ground that LAP's

testing was now controlling.  *Cf.* Pl.'s Mem., Ex. E.  No samples were sent for further testing to

Headquarters.  *Id.*  On or about April 25, 1994, Headquarters responded to the District Director of

LAP that

> the garments submitted with Sunderland of Scotland, Inc.'s request for a
> binding classification ruling were determined to be water resistant by the
> New York Customs laboratory.  There is no reason to hold these laboratory
> results suspect, nor has this office been provided with any information which
> would serve as grounds for a reversal of the holding in NYRL 876026. . . .
>
> Assuming that the testing methods employed by both the New York
> and Los Angeles Customs laboratories are correct, this office does not see the
> need to revoke NYRL 876026 nor to reject the findings of the Los Angeles
> Customs lab merely because they are at variance with the initial findings of
> the New York Customs lab with regard to the same garment styles.  Indeed,
> given the variability of plastics applications, the fact that different shipments
> of the same styles of garments resulted in different degrees of water
> resistancy when tested in accordance with the AATCC 35-1985 is not
> surprising. We recognize that future shipments of the above-referenced styles
> may very well pass the water resistant test, in which case application of
> NYRL 876026 would be warranted.

---

[3](...continued)
respect to the plaintiff's averments is not material for purposes of considering the government's
cross-motion. Defendant's Response to Plaintiff's Statement of Material Facts as to Which There
Are No Genuine Issues To Be Tried ("Def's Resp.") ¶¶ 6, 9.

In situations where a Customs laboratory test has been performed on merchandise purporting to be "identical" to merchandise the subject of a prior ruling, where the lab test reveals that the merchandise the subject of the subsequent transaction is not the same, the classification of these goods will be based on the lab's findings and the original ruling will not control. To hold otherwise would increase the likelihood of importers' relying on previously issued rulings which are no longer representative of the merchandise currently being imported. The opportunity for abuse in this situation is considerable.

HOLDING:

NYRL is affirmed.

If style numbers 1114, 1111 and 1117 are determined to be water resistant when tested by a Customs laboratory in accordance with AATCC Test Method 35-1985, classification is proper under subheading 6201.93.3000 HTSUS[ ] . . . .

If laboratory tests reveal that the subject garments are not water resistant, the merchandise is different from that classified in NYRL 876026 and that ruling will not control, as mandated by . . . 19 CFR 177.9(b)(2)[ ]. In instances where styles 1114, 1111 and 1117 are not deemed water resistant when tested in accordance with AATCC Test Method 35-1985, classification is proper under subheading 6201.93.3511, HTSUS[ ], which provides for other men's anoraks, windbreakers and similar articles, dutiable at a rate of 29.5 percent *ad valorem*. . . .

HQ 955909 (Apr. 25, 1994). *See id.*

According to the Jordan Declaration, on or about June 8, 1994, the CIS provided Mr. Jordan with a copy of HQ 955909 and informed him that effective June 7, 1994, Customs would require the plaintiff to classify the Styles under HTSUS 6201.93.3511 as not water resistant unless the plaintiff proved the pullovers met AATCC Test Method 35-1985. Jordan Decl., ¶ 6. Mr. Jordan declares that he made a mistake in relying upon the CIS's instruction, that he was under the mistaken belief that

her directive accurately reflected HQ 955909, and that had he read HQ 955909 he would have disregarded such advice. Jordan Decl., ¶ 9.

Mr. Jordan forwarded the information from the CIS to the plaintiff. Jordan Decl., ¶ 7; Freund Decl. ¶¶ 3 & 4; Ex. B. In or about May or June 1994, the plaintiff changed brokers from Yusen Air & Sea Service to Expeditors International. Pl.'s Statement ¶ 13. The plaintiff forwarded the information received from Mr. Jordan to Expeditors, which entered Styles of pullovers from May 21, 1994 as not water resistant. *Id.* ¶¶ 13 & 14. The plaintiff avers that such entries were in accordance with the directive of the CIS.[4] Pl.'s Mem. at 6. It further avers that Customs admits that it did not test any of the garments comprised by the entries which are the basis of this case. *Id.* ¶ 16. *See* Pl.'s Mem., Ex. G (Defendant's Response to Plaintiff's Request for Admissions ¶¶ 1 & 2).

The plaintiff argues that the entries of Styles should have been classified in accordance with HQ 955909 as not water resistant and that it was erroneous for Customs to classify and liquidate the Styles under subheading 6201.93.3511 or 6202.93.5011 as not water resistant. Pl.'s Mem at 6. The plaintiff states that in or about February 1995, it "realized" that HQ 955909 affirmed NYRL 876026, and on March 16, 1995 began filing protests for entries of Pullovers classified as non-water resistant which were liquidated within the preceding 90 days. *Id.* at 7. Customs approved four of these protests. Def's Resp. ¶ 18. As to entries of Styles which were liquidated more than 90 days prior, the defendant avers that Customs approved the first three of the plaintiff's requests for reliquidation under 19 U.S.C. § 1520(c)(1). *Id.* ¶ 6, Ex. F. The protests filed on the claims for reliquidation,

---

[4] The defendant avers that pullovers of Style No. 1111 were classified as not water resistant on Invoice 15 of Entry No. 231-4914947-0 (June 5, 1994) under subheading 6201.93.35 of HTSUS. Def's Resp. ¶ 6.

which were denied by Customs and are the subject of this action, were suspended by LAP pending

a decision on the plaintiff's Application for Further Review of Protest No. 2720-95-101411, which

LAP forwarded to the Office of Regulations and Rulings ("ORR").  *See* Def's Statement of

Additional Material Facts as to Which There Are No Genuine Issues To Be Tried ("Def's

Statement") ¶¶ 5-7.  On Protest 2720-95-101411, ORR stated that since

> the protestant had received two rulings indicating two different laboratory
> results (and therefore, two different classifications), it was incumbent on the
> protestant to prove which classification was appropriate for the entry in
> question.  In fact, the protestant still has not, in accordance with 19 CFR
> 177.9(b)(2), provided any evidence that the jackets involved were identical
> to the samples submitted in the ruling request.  Customs alleged "lack of
> knowledge of coatings on this import shipment" was a result of the
> protestant's failure to provide such information.  The classification of the
> garments by the import specialist, if in error, was an error in the construction
> of law, and excluded from relief under 19 U.S.C. 1520(c)(1).

HQ 226707 (Sep. 19, 1996).  Following denial of that protest, LAP denied the remaining suspended

protests subject to this action. Def's Statement ¶¶ 8-9. The Court concludes that there are no genuine

issues of material fact and that summary judgment on the matter is appropriate.  *See*, *e.g.*, *Executone*

*Information Systems v. United States*, 96 F.3d 1383, 1385 (Fed. Cir. 1996); *Sweats Fashion, Inc. v.*

*Pannill Knitting Co.* 833 F.2d 1560, 1562-1563 (Fed. Cir. 1987).

19 U.S.C. § 1520(c)(1) does not remedy mistakes of law, thus the preliminary inquiry is

whether the plaintiff pleads a mistake of fact or of law.  A mistake of fact occurs when a decision

is based on a reasonable belief that a fact exists differently than in reality, and a mistake of law

occurs when the legal consequences of a given set of facts are incorrectly interpreted or anticipated.

*C.J. Tower & Sons of Buffalo, Inc. v. United States*, C.D. 4327, 68 Cust. Ct. 17, 22, 336 F. Supp.

1395, 1399 (1972), *aff'd*, 61 CCPA 90, 499 F.2d 1277 (1974).  *See Hambro Automotive Corp. v.*

*United States*, 66 CCPA 113, 119, 603 F.2d 850, 855 (1979).  Central to the plaintiff's claim is alleged reliance upon direction from the CIS to its customs broker to enter all Styles as not water resistant.  If so, that was in error.  Unfortunately, the Court must conclude that  it was an error in the construction of law for which the protest procedures of 19 U.S.C. § 1514 were designed, and it was not the type of inadvertence which must characterize 19 U.S.C. § 1520(c)(1) claims.  *Compare*, *e.g.*, *Chrysler Corp. v. United States*, 24 CIT ___, 87 F. Supp. 2d 1339 (2000) *and Zaki Corp. v. United States*, 21 CIT 263, 960 F. Supp. 350 (1997) *with Universal Cooperatives, Inc. v. United States*, 13 CIT 516, 715 F. Supp. 1113 (1989) *and Fibrous Glass Products, Inc. v. United States*, C.D. 3874, 63 Cust. Ct. 62 (1969).  In the absence of a valid protest via 19 U.S.C. § 1514, jurisdiction under 28 U.S.C.§ 1581(a) will not lie.  *NEC Electronics*, *supra*, 13 CIT at 218, 709 F. Supp. at 1176. Fundamentally, the plaintiff argues that it should not bear the onus for relying on the advice of so-called "experts" with respect to the proper classification of its merchandise.  Pl.'s Mem at 15. Briefing, however, offers inadequate explanation of why it took until February 1995 for the plaintiff to "realize" the alleged error of Customs' interpretation of HQ 955909 after being notified of Customs' position, via its customs broker, in June 1994.  The Court therefore declines to exercise subject matter jurisdiction under 28 U.S.C. § 1581(i).

Judgment will enter accordingly.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: August 29, 2001
            New York, New York